## LEWIS vs· PETAYVIN.

The record of a slave's conviction of theft, cannot be read in a suit between other parties.

If a note sued upon, as lost, is admitted by the defendant to have existed and not pretended to have been paid, presumptive evidence of its loss will suffice.

But the plaintiff will be made to give security for the defendant's indemnification.

APPEAL from the court of the second district.

MARTIN, J. delivered the opinion of the court. This is an action on a note of the defendant, which is alleged to be lost, (10 *Martin*, 36,) the plaintiff having been robbed of it. The defendant pleaded the general issue, there was judgment against him, and the defendant appealed.

At the trial, the district judge, notwithstanding the opposition of the defendant, received

in evidence, the record of the conviction of a slave charged with robbing the plaintiff; a bill of exceptions was taken.

East'n. District.
*June* 1825.

The counsel of the defendant relies strongly on the case of *Steele* vs. *Caseaux*, 8 *Martin*, 318, in which we held that the conviction of a slave cannot be read, in the action against his owner. That case was much stronger than the present, because owners of slaves are cited, on the trial, and have the opportunity of defending them.

Our learned brother, in the district court, was of opinion that "the record of the slave's conviction was good evidence to prove that a robbery took place on the plaintiff and to prove that act alone, the court received it."

The counsel for the appellee has urged, that in the case cited out of *Martin*, the record was introduced to prove the very point, on which the plaintiff predicated his right to recover, viz. that the defendant's slave had done him an injury, for which, he, the defendant was liable; whilst in the present, the record is offered not to prove the original transaction on which the note was given, nor even the existence of the note or its contents, but solely the collateral facts of its loss.

The answer of all this is that *all* facts must be

proven by *legal* evidence, that the record of a conviction, to which the person, against whom it is offered, was not a party, is, as to him *res inter alios acta*. It is said the conviction may have been had on the evidence of the party, who offers the record in evidence. Slaves may have testified to the facts, and their evidence, which is of no avail against white persons, might thus have indirectly that effect, which the law denies it. If these were the only difficulties, a court might see by a perusal of the record, whether it was objectionable on either of these grounds. The true reason is that the party against whom it is offered might perhaps have made a legal objection to some of the witnesses sworn, might have cross-examined them and give quite a different colouring to their testimony, or might have rebutted it.

On this ground, we think the record ought not to have been read.

Objection was also taken to the reading of the deposition of Killiam, on the ground that the witness derived all his knowledge of the facts he related, from the plaintiff; but the judge states he considered it good evidence to prove that, on or about tne 20th of June, 1820, the plaintiff had the defendant's note in his

possession, and that it was not endorsed.—
These circumstances, the deposition shews the
witness declares, not from what he heard the
plaintiff say, but from what he saw.

The plea of the general issue, that is to say
the denial that the defendant did make the
note, the payment of which is demanded of
him, is disproved by the written evidence af-
forded by him, and which it appears he permit-
ted to be read, without opposition.

He certifies, under his own hand, that the
plaintiff declared to him, that he had been
robbed of the note, given him by the defendant,
on the 15th of June for $720, payable at 60
days, and forewarned him not to pay it, un_
less it was brought with the plaintiff's endorse-
ment. This certificate bears date of the 27th
of June.

Killiam, whose testimony was objected to
on the ground that his knowledge of the facts
related, was entirely derived from the plaintiff,
deposes that towards the middle of June, he
saw, in the possession of the plaintiff, in Baton
Rouge, a note or a paper, in the French lan-
guage, purporting to be a note of the defen-
dant, for $720, that he heard it read in English,
by a person conversant in both languages, that
it was not then endorsed.

East'n. District.
*June* 1825.

LEWIS
*vs.*
PEYTAVIN.

An advertisement, put by the plaintiff, in the Baton Rouge Gazette, on the 28th of June, 1820, announcing he had been robbed of the note, and offering a reward, was read without opposition.

Two witnesses Landry and Richard, deposed to the contract for a certain number of cattle, which the defendant paid for by his note to the plaintiff for $720 and $60 in cash.

All this testimony has been admited without any opposition, on the part of the defendant. Perhaps no part of it could have been succesfulld tendered, if the defendant's counsel had insisted on the legal proof of the robbery; but this evidence so received is legal evidence, by the permission of the defendant.

It is incontestibly proved that the plea of the general issue is absolutely false. We must then conclude that the defendant gave the plaintiff his note, that it is now due. He does not pretend that he paid it nor any part of it.

Why then does he resist the claim? Because he is afraid the note may be produced and he compelled to pay it. It is sworn it was not endorsed, a short time before (according to the plaintiff's declaration, certified by the defendant and read with his consent) the plaintiff

was robbed of it. But the plaintiff may recover, endorse and put it in circulation. No call has yet been made on the defendant, although five years elapsed, since proclamation of the robbery was made, and a holder who acquired it, after its maturity, would hold it liable to every equitable plea that might be opposed to the payee.

Still it is just the plaintiff should yield every possible means of indemnification to the defendant, against every possible chance. This the judge *a quo* decreed to him, by ordering the plaintiff to give bond with surety. The district court directed this to be done; but the defendant's counsel contends that the district court erred, in directing the bond to be given to the clerk, whilst it ought to be to the defendant. The bond is ordered to be delivered into the hands of the clerk, and this does not imply that it shall be payable to the clerk, but to the defendant, for whose benefit it is to be given.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.

*Watts and Lobdell* for the plaintiff. *Moreau* for the defendant.